Good morning, Your Honor. It's Harry Simon for Petitioner and Appellant Michael Clark. In its order following evidentiary hearing, the District Court concluded that the medical evidence supports the finding that Petitioner suffers from some degree of mental illness. In this case, the only issue for this Court is whether or not the mental illness is sufficient to justify the request for equitable tolling that Mr. Clark made. Dr. Anderson testified at evidentiary hearing and submitted a declaration stating that Clark suffers from bipolar disorder and very severe attention deficit hyperactivity disorder, which renders him very impulsive, disorganized, distractible, unrealistic, occasionally delusional, and unable to sequence and prioritize his thoughts. As a result, he had great difficulty meeting deadlines and coping with responsibilities in a reliable manner. And it really took the urging of his wife to prompt him to start the process of challenging his conviction and sentence through habeas proceedings. The difficulty in this case is that there has been a hearing. The doctor testified, as you said, and testified at some length. And then your client said the reason that I didn't file earlier was because I didn't want my fellow prisoners to know that I had been convicted of rape. Now, the district judge then made a factual finding and found that that was the reason. And he had some comments on the doctor's testimony also. But how can we say that that was not – that it's a clearly erroneous finding that that was the reason that he didn't file on time? Well, I think that Mr. Clark's testimony on the point was not a model of clarity, certainly. I do think that certainly he did testify that one of his reasons was that he didn't want other people to know. He also testified that he was unclear about his sentence, that he was mentally ill. It seems to me that the main point that Magistrate Judge Goldman was making in his decision was that because Petitioner said that he was admitted malingering, admitted exaggerating mental illness to some degree, that Dr. Anderson's conclusion was undermined by that. And I don't think that's actually correct. I think that Dr. Anderson was well aware of the fact that Mr. Clark had exaggerated his symptoms of mental illness, but was relying on a lot more than that in reaching the conclusion that he was, in fact, mentally ill and suffered from serious mental illness. As Dr. Anderson himself stated, the best evidence with regard to whether or not the client was mentally ill was the history of treatment that he'd received in prison, that he'd been treated for many, many years by a number of treating physicians who had an opportunity to see him, to see his symptoms, that they'd prescribed powerful antipsychotic medications for him, and that, in fact, they wouldn't have prescribed such medications, which had serious side effects, if they didn't believe that he was seriously mentally ill, that his clinical presentation was consistent with that. Dr. Anderson also spoke to the client's mother, also reviewed his social history. And it all contributed to the conclusion, and I think it actually is a well-supported conclusion, that Mr. Clark does suffer from very serious mental illness and that this mental illness interfered. Equitable tolling is appropriate when mental illness prevents the sufferer from managing his legal affairs. I don't really think there's much dispute about that, that if the cause of his failure to file was mental illness and that was the reason that that prohibited him from filing, I don't think there's any dispute that that would justify the tolling. I think the issue is whether it was the mental illness that caused him not to file in a timely manner, or whether it was, as he said, because he didn't want other people to know that he was there for rape. And we would have to find the factual determination clearly erroneous, wouldn't we? I do. I would. I am not. In looking at the record, I did not find a specific finding that the reason that Mr. Clark did not file was in fact as a result of the fact that he did. Well, I mean, if you look at his testimony, let me just, I'm on, I guess I don't have the 197 of the transcript. Question to Mr. Clark is, so the reason we are here that you waited so long to file your papers in court was because you didn't want to upset your wife? No, I mean, I didn't want to upset my wife, but I also didn't want the other inmates to know what I was in prison for. I've told you that. I mean, that's, it's hard to overcome that. If it's to your credit, that is truthful. He's saying, I didn't want the other inmates to know what I was in for. The prior line of questioning is, didn't you have family? He says, I had my wife, but I didn't want to involve her, and I don't involve her now. I mean, that doesn't speak to the lack of the mental capacity to understand you ought to file something. At a later point, he testifies, in fact, that he only filed at the urging of his wife, and that, in fact, it required the involvement of his wife to get him to file. And it seems to me that given his other, given his mental illness, I don't know that Mr. Clark had a lot of insight into the role that his mental illness played in the decision to file. As Dr. Anderson did find, his symptoms really did make it very, very difficult for him to do much without the assistance of others. And he does testify later on that it did require the involvement of his wife, Elena, to convince him to do it, and that, in fact, is also what he told Dr. Anderson. I understand the factual spin you're putting on it. It's a good argument. But then how do we find the facts as determined are clearly erroneous, saying that he did not suffer from. I mean, isn't that a sufficient basis in the record for the district court measure to conclude that his mental illness was not so severe that it prevented him from filing? Well, what the judge has to say is that Petitioner did testify the reason he didn't seek help in filing for post-conviction relief was because he didn't want other prisoners to know that he'd be convicted of rape. Right. That's what he said. Yes. So that's true. Yes. Based upon this evidence, the Court declined to credit his claim that he had been unable to learn that his sentence was 95 years until approximately July 1999. But what the judge doesn't say is that his mental illness didn't contribute to this. What he says on that question is that there's no question that he suffers from mental illness, that the Petitioner hasn't shown the mental incompetency or that his condition prevented him from filing a timely petition, that Dr. Anderson testified that his mental condition interfered with his ability to file a timely habeas petition, but that Dr. Anderson's finding that Petitioner often exaggerated or lied about his symptom undermines his opinion. So it seems to me that the judge, what the judge is not finding is, look, he said that the reason that he didn't file was simply because he was afraid of other inmates finding out about this, and therefore, I decline to credit the idea that his mental illness contributed to this. What, in fact, the judge says is, because of that, I decline to credit his claim that he'd been unable to learn that his sentence was 95 years until approximately July 1999. So I think the finding is somewhat different, in fact. And the real question this Court has to come to grips with is whether, in fact, as Dr. Anderson testified, his mental illness interfered with his timely filing. Well, is it interfered or precluded? I mean, you can have a contributing factor that does not rise to the level of preclusion. I mean, Kelly, which is our central case on this, really talks in terms of competency. And he's clearly competent. He has mental problems, but he's not incompetent in the way that we would think of that in terms of being able to be tried for an offense. Well, at trial, of course, what you're really looking at is whether or not someone is able to assist counsel. And in this case, he doesn't have counsel to assist him. He's going to have to accomplish these acts of putting together the habeas petition and filing the habeas petition on his own. So I think it's somewhat different from that point of view. And I think the question is whether his mental illness prevents him from managing his legal affairs and acting on his legal rights. And I think in this instance, his mental illness is sufficiently severe to do that. He was receiving a number of powerful antipsychotic medications, including Zyprexa. And while it's true that at this point he has more insight into his own mental illness because he's being successfully treated, I think during the time period in question he certainly was not. And I think Dr. Anderson's conclusions on that point are hard to really dispute. And if I can reserve the remainder of my time for a couple of questions. There's no remainder, but we'll give you a couple of minutes. Thank you. Good morning, Your Honors. May it please the Court. Richard F. Moskowitz, Deputy Attorney General, on behalf of the Warden, both the named Respondent and the Warden who now holds Petitioner in custody. As Petitioner admits at page 6 of his opening brief, the bottom line here is that he did not file his federal habeas petition until four and a half years after the statute of limitations had expired. So there's only one issue before the Court, and that is whether the district court properly denied Petitioner's equitable tolling claim on the basis of his alleged mental incompetence. In his briefs, Petitioner points almost entirely to the evidentiary hearing of Dr. Raymond Anderson, his expert at the evidentiary hearing, and says that on the basis of Dr. Anderson's expert testimony, the district court should have found him to be mentally incompetent. There are three key deficiencies in this argument, one of which Judge Reinhart and Judge Thomas, you both have already commented on, namely that during the hearing, Petitioner testified, admitted that the delay had nothing to do with his mental illness and everything to do with the fact that he did not want his fellow inmates and his wife to find out what he was in prison for. Counsel tells us that his testimony was not a model of clarity. On the contrary, I think it was absolutely clear, it was unambiguous, that he made a conscious decision that the people that he felt he wanted to get, he would have wanted to get help for in preparing a habeas petition, he didn't want those people to know these key details. It was a conscious decision that he made, and neither that conscious decision nor the fear that prompted it constitute an extraordinary external factor outside his control, which the Kelly case makes clear is required for equitable tolling. There's a second problem, which I believe Judge Thomas alluded to, which was that Dr. Anderson's testimony, even if you accept it at face value, did not meet the applicable legal standard. As the district court correctly recognized in this case, and as my adversary acknowledged, mental illness tolls a limitation period only if the illness, in fact, prevents the sufferer from managing his legal affairs and thus from understanding his legal rights and acting upon them. Although Dr. Anderson opined that Petitioner suffered from a mental illness that interfered with his ability to file his state and federal petitions on a timely basis, that's not the standard. Dr. Anderson stopped well short of saying that Petitioner's alleged mental illness prevented him from managing his legal affairs, understanding his rights, or acting on them. Now, there's a third and, I would say, even more important reason why Petitioner's reliance on Dr. Anderson's testimony must fail, and that is just because Dr. Anderson held a certain opinion of Petitioner's mental condition does not make it so. As the court recognized, Magistrate Judge Goldman held an evidentiary hearing, heard live testimony from Dr. Anderson, heard from Petitioner's trial counsel, Arthur Broderick, and heard from Petitioner himself. Based on his observations of these witnesses, the Magistrate Judge made determinations about their credibility and specifically found Dr. Anderson's opinion to be unpersuasive. The Magistrate Judge credited the testimony of a court reporter, Yolanda Potter, and of trial counsel, that the prosecutor had offered him a plea bargain that would result in a sentence of 99 years, not 9 years or 10 years. But what does that have to do with it? That issue was really gone. I mean, that was the issue they were proceeding on until you got to court, I gather. And then no one's disputing that now. The only issue is the issue that arose, I gather, at the hearing, which is why didn't he find a way to file the petition, or was his mental condition what prevented him from filing the petition? You're absolutely right, Your Honor. The issue of per se what he was informed of is gone from the case. But it's still relevant because it shows that his testimony about that matter and others was a lie. And it provides another basis, one of many bases, for the Magistrate Judge making the credibility determination that he made. Well, I think Dr. Anderson said that he exaggerated at times. He told stories. He was not entirely truthful. He certainly didn't. He took all that into account when he formed his opinion. That's right. And even knowing all of that, he thought that, let's assume for the moment that it interfered, precluded, whatever it is. Yes. He thought that the mental condition, taking into account everything he knew about him, that that did interfere with his filing the petition on time. If you had just had that testimony and the defendant hadn't taken the stand, you might have a pretty tough time justifying a finding that rejected Dr. Anderson's testimony. Wouldn't you think so? No, I don't, Your Honor, because, of course, the petitioner did take the stand. I understand. But let's assume we just had Dr. Anderson and no other expert, nobody who disagreed, Dr. Anderson came and said what he said. And, you know, I said this guy lies to me sometimes. You know, I know that part of what he does is exaggerate. He tries to, you know, make up stories. I know all that, but I've studied all his medical records. I've spent a lot of time. And it's my opinion that he – that his mental condition prevented him from filing during this period. Do you think that that could just be rejected by a judge? Well, Your Honor, I believe that is a fair summation of what he testified to. But he was cross-examined at length about those points and about numerous circumstances of the case that tended, in our view at least, to cast doubt on the petitioner's mental health claim, in fact tended to cast doubt on whether he was mentally ill at all. And he essentially acknowledged all of those factors, but said it didn't change his opinion. The magistrate judge was certainly entitled to take account of his responses to that cross-examination in evaluating how persuasive the doctor's opinion was. If the doctor's opinion was shown by means of cross-examination to rest on a shaky foundation, then the magistrate judge was entitled to reject it. And that's essentially what he did. I gather you'd agree that this is a fairly fact-intensive inquiry. Very much so, yes. I know Kelly talks in terms of competency, but I'm not sure that's quite the standard. I mean, if there were competent medical testimony that he was incapable of filing and credited by the magistrate judge, this would be a different case, wouldn't it? Well, it probably would. We don't have that case here. No. But I think that the issue was correctly the legal framework was correctly identified by the district court and, indeed, by Petitioner's counsel, because he says the same thing in his brief, namely that the test is whether the mental illness is severe enough to prevent the Petitioner from managing his legal affairs, understanding his rights, and acting upon those rights. And I don't think we're even close. And even if you credit, if you fully credit Dr. Anderson's testimony, we're still not there, based on what I said earlier, namely that he said it interfered, as you pointed out, Judge Thomas, that it suggested that it was perhaps a contributing factor. But that's different from it preventing him from having the ability to do these things. I take it, although that's not an issue in this case, if you had a case where you had somebody who came in and out of competency, which is not uncommon, that the tolling would apply, in your judgment, to those periods where a person could not manage his legal affairs but would not to the time in which the person could. Well, if it could be shown, if it could be demonstrated through persuasive expert testimony, along with all the surrounding circumstances, that there was a time period in which the Petitioner was unable to manage his legal affairs because of a mental illness, then tolling might be appropriate during that time period. The Court would also have to consider what would then become the subsidiary issue. Did the Petitioner, in fact, exercise due diligence during those periods when he was not so disabled? And, I mean, going back to the facts of our case for a moment here, his decision to essentially not tell anyone about the reason why he'd gone to prison, you know, you can dress it up, but what it basically amounts to is a lack of diligence. You can also say that if an individual makes a conscious decision that he doesn't want certain people to know certain things about his background, or if he makes a conscious decision, as Dr. Anderson explicitly recognized that he had, to fake the symptoms of mental illness, exaggerate the symptoms of mental illness, for purposes of constructing a more advantageous legal position to himself, that in and of itself demonstrates that he is capable of managing his legal affairs and understanding his rights and acting on them. He may be doing it in a way that we as lawyers or advocates would deem to be inadvisable, unethical, et cetera, but it does demonstrate that he's capable. Thank you. I have nothing further. Thank you. I have really only one point that I want to make. Certainly Dr. Anderson's testimony, if credited, would be sufficient to support a finding, as Judge Thomas noted, of equitable tolling, that he lacked the – that he was unable to manage his legal affairs. Do you think that's the correct standard? I do believe that that is the correct standard, yes. I believe that the Court didn't have a good basis to reject that finding, and that, in fact, the reason that the Court gave for rejecting the finding, which really was that Mr. Clark was a malinger, did exaggerate some of his psychopathology, is an insufficient basis. Thank you, counsel. Case just argued is submitted. Thank you, Your Honor. Thank you. Final case of the morning is
judges: Lay , Reinhardt, Thomas